## No. 2146.

### IKE CASEY *v.* E. G. HANRICK.

1. **LANDLORD AND TENANT.**—Tenants and their privies in blood and estate are, as a rule, to which the exceptions are well defined, estopped from denying the title of the landlord from whom they obtained possession. It follows that a tenant, while enjoying possession of land by contract with his landlord, can not purchase an adverse title and rely on it as against the claim of the landlord, to protect this possession, and this rule applies to one who obtains possession under a verbal contract to purchase.

2. **PARTIES.**—As a general rule, damages can not be set off unless they are mutual and between parties to the action. Damages claimed to have been caused by the alleged wrongful conduct of plaintiff's attorney in directing the execution of a writ, can not be recovered under a plea in reconvention, filed by defendant, in which the attorney is sought to be made a party to a suit instituted to recover rent.

3. **DAMAGES—SEQUESTRATION.**—The plaintiff, in a proceeding by sequestration, who by his conduct ratifies the conduct of a sheriff who has abused the process of the court by the oppressive and harsh manner in which he executed it, so that injury thereby resulted to the defendant, is reponsible therefor.

APPEAL from Falls. Tried below before W. M. Flournoy, Esq., Special Judge.

This suit was brought by E. G. Hanrick against Ike Casey in the district court of Falls county on twenty-sixth of October, 1881, to recover fifty acres of land out of the Le Serda eleven league grant, with the rents therewith accruing. It appeared that E. G. Hanrick had been in the lawful possession of the land, claiming it, as his own, since the year 1871 or 1872; that he had caused houses to be builded upon it, and put thirty-five or forty acres in cultivation, and that it was worth about one hundred dollars per annum, rent. That in the summer of 1878 Hanrick through his agent, Goodrich, made a contract for the sale of the land to W. A. Graves, Graves paying one hundred dollars and agreeing to execute his note for five hundred dollars, when Goodrich was to make him a bond for title to the land. Graves entered at once into the possession of the land, but failed to execute his note, and Goodrich never executed bond or other

writing for the land.  E. G. Hanrick had always claimed to be the sole heir of Edward Hanrick who was shown to have died seized of the Le Serda grant, and it was the intention of Goodrich if Graves had have complied with his contract, to have made him a general warranty deed to the land.  E. G. Hanrick had before this sold a good deal of this grant, claiming to be the exclusive owner, as the sole heir of said Edward Hanrick, but nothing was said to Graves by Goodrich as to the validity of Hanrick's title, either at or before the sale.  Goodrich knew that Edward Hanrick had relatives living in Ireland, but did not think aliens could inherit land in Texas, and believed that E. G. Hanrick was the sole owner of the land.  In the fall of 1879 Goodrich learned that Casey was in the possession of the land, and went to him and demanded rent.  Casey claimed that he had already paid the rent to Graves, and purposed to buy the land.  Goodrich agreed to sell if Casey would make a payment the next season.  Casey failed to make the payment and Goodrich demanded rent and possession of the land.  In the year 1880 W. A. Graves had conveyed to said Casey all the right, title and interest that he had in the land, Casey having knowledge of the extent of Graves's claim.  This suit was filed on twenty-sixth of October, 1881.  A few days before, Goodrich again demanded possession of the land.  On the twenty-second of October H. F. Ring, for himself and as agent of certain of the heirs of Edward Hanrick entitled or supposed to be entitled to one undivided third of his estate, conveyed to Casey the land in controversy to be paid for after all of the lands belonging to the estate of the said Edward Hanrick had been partitioned, and the title to this entire tract vested in Casey under said partition, and in case said land should be allotted to any of the other heirs or their vendees payment was to be made to them.

There was a suit by W. A. Graves in the district court of Falls county v. Ike Casey concerning this tract of land, in which the court rendered judgment canceling the notes that Casey had given Graves for the land, and restoring the possession of the land to Graves, which Graves at once surrendered to the defendant in error, E. G. Hanrick.  So that at the trial Hanrick was in possession of the land, it having been voluntarily restored to him by Graves.  All of which was set up by Hanrick's supplemental petition, filed February 17, 1885, and proved on the trial.  At the commencement of the suit a writ of sequestration was sued out, and Casey's possession of the land temporarily inter-

rupted by virtue thereof; he afterwards replevied and claimed damages for the wrongful and malicious suing out and execution of the writ, and claimed that he had a right to hold possession of the land under the facts hereinbefore stated, or, at all events, that Hanrick should be enjoined from further prosecuting this suit until the litigation between the heirs of Edward Hanrick, deceased, and E. G. Hanrick should be disposed of; alleging in this behalf that E. G. Hanrick had, before his sale of the land to Graves, sold more than his share of the estate of Edward Hanrick; that he was insolvent, and that a federal court had already rendered a judgment in favor of the heirs of Edward Hanrick, under whom he, Casey, claimed against said E. G. Hanrick, for an undivided one-third interest in the lands belonging to the estate of said Edward, which included the land in controversy. , The trial resulted in a verdict and judgment in favor of E. G. Hanrick for the land and for the rents while Casey held possession.

Ike Casey prosecutes his writ of error.

*Brady & Ring*, for appellant: On their proposition that Casey, though buying from Graves after the institution of the suit for partition, had the same rights which Graves himself would have had, they cited Ellis v. Singletery, 45 Texas, 41; 1 Story's Equity, sec. 420, p. 388.

That the attempted sale by E. G. Hanrick of entire title to Graves without disclosing existence of other heirs, was fraud, they cited Cook v. Grant, 16 American Decisions, 564; Ingram v. Morgan, 40 American Decisions, 626; Cullorn v. Branch Bank, 37 Id., 727.

That vendee is not estopped from denying title of vendor in case of fraud, they cited Tyler v. Davis, 61 Texas, 677; Gallagher v. Bennett, 38 Texas, 295; Palmer v. Chandler, 47 Texas, 334; Copeland v. Gorman, 19 Texas, 256; Wheeler v. Styles, 28 Texas, 243; Turner v. Ferguson, 58 Texas, 8; Camley v. Stanfield, 10 Texas, 552; Andrews v. Richardson, 21 Texas, 297; Littlefield v. Tinsley, 22 Texas, 259; Watkins v. Holman, 16 Peters, 54; Croxall v. Shererd, 5 Wall, 287; Kerr on Frauds, note, page 328.

That that injunction should have been granted, they cited Jones v. Taylor, 7 Texas, 249; Cooper v. Singleton, 19 Texas, 268; Taylor v. Johnson, 19 Texas, 354; Gober v. Hart, 36 Texas, 141; Estell v. Cole, 52 Texas, 170. Especially so when validity

of title has been established by judgment against vendor. Luns-
ford v. Turner, 20 American Decisions, 250.

On their right to plead such damages in reconvention, they
cited article 650, Revised Statutes; Harris v. Finberg, 46 Texas,
88; Clardy v. Callicoate, 24 Texas, 171; Brady v. Price, 19 Texas,
289; Hamilton v. Van Hook, 26 Texas, 306; Carlin v. Hudson, 12
Texas, 203; Coleman v. Bunce, 37 Texas, 172; Walcott v. Hen-
drick, 6 Texas, 417.

On malice, they cited Culbertson v. Cabeen, 29 Texas, 255.

On appellee's liability for the sheriff's acts, they cited Wallace
v. Finberg, 46 Texas, 37; Hilliard on Torts, 215, 293, 297, 312, 313;
Story on Agency, 576, 554, 452.

That Goodrich was liable in reconvention, they cited Hilliard
on Torts, 293, 302, 304. Is joint, Id., 310, 315, 317, 292. On joinder
of, they cited Dobbin v. Bryan, 5 Texas, 276; Clegg v. Varnell,
18 Texas, 303; Waddell v. Williams, 37 Texas, 351.

*Goodrich & Clarkson,* for appellee: On their proposition, that
a person who obtains possession of land under a verbal under-
standing to purchase, acquires no right or estate thereby, and
will not be heard to dispute the validity of the title or claim un-
der which he entered, cited the Statute of Frauds; Lyles v.
Murphy, 38 Texas, 75; Tyler v. Davis, 61 Texas, 674.

MALTBIE, JUDGE.   W. A. Graves entered into possession of the
land, as the vendee of E. G. Hanrick, under a verbal contract
with his agent, G. W. Goodrich.   He is not shown to have been
deceived or in any manner misled as to the title.   He paid, on
taking possession, only the sum of one hundred dollars.   He is
not shown to have ever offered or desired to comply with his
contract with Goodrich, neither is he shown to have been in any
way damaged by the contract, or to have done anything what-
ever that would have entitled him to have called on E. G. Han-
rick to make title to the land.   On the other hand, one year's
rent of the land is shown to be worth all that Graves ever paid
on his contract of purchase.   This contract was void under the
statutes of the State, and, in view of the facts proven, it could
have been of no consequence to Graves whether E. G. Hanrick
was the sole owner of the land.   Graves sold Casey only such
title as he had, which was none at all; nor was his claim based
on any equity.   Casey, knowing that he had no just claim to
the land, agreed to buy from Goodrich, but when time for pay-

ment came around he failed to pay as he had agreed to do, and, upon possession being demanded, he immediately purchased a title hostile to the one under which he was holding and seeks to defend under this title, without first surrendering possession to E. G. Hanrick. There is no dispute but that tenants or their privies in blood or estate are, as a general rule, estopped from contesting the title of their landlord as long as they hold the possession originally derived from him. Most of the exceptions to this rule are stated in 4 Wait's Actions and Defenses, 259, as follows:

"The tenant may, however, show that the landlord's title has expired, or that some change has taken place in it since the lease; that he himself has purchased a title not inconsistent with his duty as tenant; or that he was induced to accept the lease or possession by fraud or mistake."

Casey has not shown himself to be within any of the exceptions stated. And we are of opinion that the title purchased by him was inconsistent with the duty that he owed E. G. Hanrick; that it was purchased in bad faith, and to allow him set it up in this suit would be to aid in the violation of his duty to defendant in error. From this it follows that the court did not err in ruling out all evidence tending to show that Casey had acquired an interest in the land, or in refusing to enjoin E. G. Hanrick from prosecuting his suit until Casey's interest in the land could be ascertained.

Nor do we think the court erred in sustaining exceptions to that portion of Casey's plea in reconvention that sought to make G. W. Goodrich, one of Hanrick's attorneys, a party to the suit for the purpose of recovering damages, on account of his alleged wrongful and malious acts in advising and directing the sheriff in executing the writ to dispossess Casey without giving him an opportunity to make a replevy bond. There can be no doubt but that Casey had a right to bring suit for all the damages he may have sustained on account of the wrongful or malicious suing out of the writ of sequestration, and to join all in the suit who in any way participated therein; but it does not necessarily follow that such suit could be maintained by way of plea in reconvention. It is a general rule that demands can not be set off, unless they are mutual and between parties to the action. (Wait's Actions and Defenses, vol. 7, p. 486.) Here, damages occasioned by Goodrich's acts, outside of his duty as attorney, were sought to be set off against a claim due from Casey to E. G.

Hanrick for rent. The writ of sequestration was properly sued out, but Goodrich is charged with causing it to be executed in an illegal, opressive and wanton manner. This was outside of his duty as attorney, and presumably outside of his employment. It would be manifestly unjust to allow such damages to be set off against Hanrick's claim for rent, and we do not think that the statute ever contemplated that it might be done. In addition to this, it would tend to complicate matters very much if every one who might participate in the wrongful or malicious suing out of attachments or writs of sequestration should be made parties to the original suit by way of plea in reconvention.

It was alleged, however, in Casey's answer, to which exceptions were sustained, that the sheriff, in executing the writ of sequestration, by direction of Goodrich, and also of Hanrick, refused to allow Casey a reasonable time to make a replevy bond, which he was able to make, and afterwards did make, and that the sheriff threw his household goods out of doors, and forced Casey's daughter also to leave while it was raining and the weather otherwise inclement, without any necessity therefor, to gratify the malice of Goodrich, and that said acts were ratified, adopted and approved by said Hanrick. This, if true, was a gross abuse of the process of the court, for which the sheriff would be liable (Crocker on Sheriffs, p. 332, par. 845; 5 Johnson, 125), and if Hanrick ratified these acts, he would also be liable. The court should have submited to the jury, as a question of fact, whether the sheriff had abused its process in serving the writ of sequestration, and whether E. G. Hanrick was, under the facts of the case, responsible. In sustaining exceptions to this portion of Casey's answer, we think there was error, for which the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Opinion adopted November 4, 1887.