MRS. CORNELIA ADAIR v. W. V. HAYS ET AL.

Decided February 14, 1903.

1.—School Lands—Lease and Sale.

The Act of April 15, 1901, amending section 6 of the Act of February 23, 1900, and providing for the purchase and sale of unsurveyed public lands set apart to the school fund did not have the effect to abrogate valid existing leases of such lands made by the State.

2.—Same—Rights of Applicant to Purchase—Trespass.

Where plaintiff had a valid lease of such unsurveyed public lands and defendant made application to have the same surveyed, with the intention of purchasing them, and caused them to be surveyed and the field notes sent to the General Land Office, he acquired no right of entry until the Commissioner had approved the field notes, appraised the lands and placed them on the market, and his action in grazing cattle upon the lands prior to this being done, they being in plaintiff's inclosure, constituted a trespass for which recovery could be had.

Appeal from the County Court of Armstrong.  Tried below before Hon. Q. Moore.

*Ware & Smith,* for appellant.

*A. W. Cole,* for appellees.

CONNER, CHIEF JUSTICE.—Appellant has appealed from an adverse judgment for damages which she sought in a suit in the County Court against appellee Hays and W. H. and Ester Norris, for trespass in and upon appellant's pasture by grazing thereon some 250 head of cattle owned by W. H. Norris.

The evidence is undisputed that appellant is the owner of a large pasture in one general inclosure situated in Armstrong and adjacent counties, and that appellee Hays entered such inclosure and pastured cattle substantially as alleged.  Appellee Hays justifies as an applicant to purchase four sections of public school lands to which said pasturing has been substantially confined.  The further facts show that within said pasture was a large quantity of what was known as unsurveyed public land set apart for the benefit of the public free school fund by the Act approved February 23, 1900.  At the time under consideration this land, including that claimed by appellee Hays, was held by appellant by virtue of leases from the Commissioner of the General Land Office, and had been so held for several years.  The leases were in good standing, and appellant was entitled to the use and control of the land unless appellee, as asserted, acquired a superior right to the particular four sections claimed by him.

By section 6 of said Act of 1900, as amended by Act approved April 15, 1901, any person desiring to purchase any of the unsurveyed lands specified therein is required to make verified application in writing to the proper surveyor, describing the land desired by metes and bounds

as near as practicable, stating that he desires to have said land surveyed with the intention of purchasing the same, and that he is not acting in collusion with any other person, etc. It is then made the duty of the surveyor to file and record such application, and within sixty days thereafter to survey the land applied for, in accordance with the directions of the Commissioner of the General Land Office, into a section or sections of one mile square, when practicable, and within thirty days after such survey to certify, record and plat the field notes of the same, and return the same together with the application to the General Land Office, stating whether or not the land is agricultural, grazing or timber, and if timber the probable value of the land. If the Commissioner of the General Land Office finds that the field notes are correct and that the survey has been made according to law, he is required to at once approve and file said field notes and to classify and value the land as the law requires, and to notify the applicant by mail that the land is on the market for sale, stating the classification and value thereof. Within sixty days from the mailing of said notice the applicant is required to make application and affidavit to purchase said land, describing the land sought to be purchased in accordance with the field notes approved by the Commissioner of the General Land Office, and to make first payment to the State Treasurer, and to execute his obligation for the unpaid purchase money in the manner provided by law for surveyed school lands. The act further provides that if on the expiration of sixty days from the giving notice of classification and valuation, the Commissioner of the General Land Office shall not have received the application to purchase such lands as provided for in the act, then he is required to place said lands on the market for sale as other school lands.

All that is shown is that appellee Hays made application and caused the survey of the four sections of land upon which the trespasses in this case took place, and the surveyor had forwarded the field notes to the General Land Office. The Commissioner, however, had not approved such field notes, as required by the act, nor had he valued or classified said lands and given notification thereof to appellee Hays that the land was upon the market for sale. Indeed it appears that other applications and surveys for part of this land had been made, but the field notes of none of said surveys had been approved, nor had any one of the applicants been notified that the lands were upon the market.

In this condition of the proof and of the law it seems clear to us that appellee showed no right to pasture the 250 head of cattle belonging to appellee Norris on the lands in controversy. It appears that there are quite a number of other actual settlers on the body of school land situated in appellant's pasture, and that no objection has been made in behalf of appellant to appellee Hays or to others becoming actual settlers; the objection is to the use of the lands during the continuance of appellant's lease by grazing cattle thereon, and as stated, we think this contention must be sustained. Appellees can not state, nor can we state, that surveys made under the Hays application will ever be ap-

proved, or that he will ever be given the opportunity presented by the act in question of becoming the purchaser thereof. In order to acquire the rights of an applicant under said act actual settlement it seems is not required, the application merely securing the right to have the survey made, and, if sixty days after the approval of the field notes by the Commissioner of the General Land Office and notification that it was on the market, to become the purchaser as required in cases of sales of other school lands. Appellee Hays' application was but a preliminary step in the acquisition of title, and the fact that the legislative act appropriated the lands to the public school fund and provided for their sale can not be considered as ipso facto abrogating appellant's leases. These leases were valid, and conferred upon appellant the sole right to the use of the land covered thereby until such right was legally divested in the manner provided by law.

We accordingly conclude that appellant's motion for new trial should have been granted. Judgment reversed and cause remanded.

*Reversed and remanded.*